The next case today is United Surety & Indemnity Co. v. Pedro Lopez-Munoz, appeal number 19-9003. Attorney Lugo, you may proceed. Yes, hi. Proceed. Thank you. May I reserve two minutes for rebuttal? You may. Thank you. In this case, there's many issues that we have discussed in our brief. I will concentrate my argument in the two most salient ones. And the first one is the equitable mootness issue. This is why the bankruptcy appellate panel dismissed the appeal. And we understand that was totally erroneous as a matter of law. Because federal courts have the virtually unflagging obligation to exercise their jurisdiction. And that means usually resolving the case on the merits. And doctrines like the equitable mootness that are discretionary, they are an exception. And they should be reserved for exceptional cases. And the case law of the First Circuit on that issue, on that doctrine, has only mooted appeals in cases in which reversing the judgment would be so complex that it would be impossible to fashion a remedy. The case that was relied upon by the panel and by DEDR is the case of in Republic Service or Rockman. And that was an extremely complex case, multimillion-dollar enterprise. And there were conversions of stock and people from outside the bankruptcy buying stock. And it would have been basically a nightmare to undo all that, to give a remedy to the appellant who had been very late in trying to obtain a stay. This case basically is a garden variety case. The DEDR has only been paying the creditors according to the confirmation plan that has been approved. There's no transactions that have to be reversed. The only transaction that has been made in this case was the sale of DEDR's house. And that's a transaction that's even consistent with a Chapter 7 conversion. And there's no need to reverse that in order to grant USEC a remedy. And also there's no prejudice to any other third parties because basically the entire premise of USEC is that the DEDR did not show that the reorganization plan will treat creditors better than conversion to Chapter 7. And if USEC prevails on that... Has there been substantial consummation here? Yes. Technically, yes. Given the term of... the meaning of the term substantial consummation, yes, in the sense that DEDR is paying people from the plan and has taken control of the business. But the question in reality is not whether there's been substantial consummation or whether... The question is whether at this stage it is impossible to grant USEC a remedy. And neither the panel nor the DEDR have specified how it is in specific terms that it would be impossible to convert this case to Chapter 7. And the panel and DEDR have been stating generalities, invoking general terms, but no, there's nothing specific. And the reality is that if this decision is sustained, then basically almost any case in which there is a confirmation of a plan and a creditor does not agree on appeals, it will be almost impossible for the appeal to be seen because as simple as the appeal may be, there will be no remedy to be granted. The equitable mootness doctrine has to be restricted to very complex cases, like it has been so far in this circuit, and this case really doesn't fit the moot. So for that matter, we're saying that the panel's decision to dismiss the case is erroneous as a matter of law and should be reversed. Could you just walk through, if you won on the merits, your understanding of what would then have to happen? Well, there's only two, as the bankruptcy judge at the beginning of the hearing on April 2 said that there were only two alternatives. If the DEDR did not comply with Section 1129, it would be either dismissal of the bankruptcy or conversion to Chapter 7. So if we prevail, those would be the remedies available. And since it's post-consummation, what would then happen if either of those forms of relief were given? How would you effectuate those forms of relief given what's already happened? What would happen to the $500 and some thousand dollars that have been distributed? Well, in our reply brief, we answered to DEDR's argument that there's no reason why those amounts that have been paid already cannot be credited to the DEDR as the assets are being sold in a Chapter 7 proceeding. So there's really no, I mean, obviously DEDR is not convenient to DEDR, but nobody else would be damaged by conversion to Title 7. And again, we will have to, we will have, if we took only substantial consummation in mind, then we will be, then this Court will be establishing a position that is not, that it will be new, it will be novel, because so far it has applied equitable, equitable, equitable movements only to get paid. What's your closest case of a post-consummation situation in which equitable, I've got a fan on. What's your closest case to facts like these, in which it's post-consummation, no stay was obtained or assumed no stay was reasonably sought, that should have been sought. What's your closest case to denying equitable movements to this one? Well, in, there's really the, for example, in Institute Pasteur, the Court didn't resolve the issue, but it made a distinction. It didn't reach that question, it resolved the case on the merits, but it did make, the First Circuit made a discussion of the factors, and it stated that the reason in Republic Service was decided the way it was, is because the equities were, one, the equities were very heavily against, against the, against the appellant, who had taken more than a year to request a stay. And on the other hand, the case was very complex because it involved. I didn't realize, but there's some point at which it becomes so simple that it's not a problem that you didn't get a stay, there's some point at which it's too complex to unwind it after the stay. Yes, there's five minutes remaining. The question I'm trying to ask you is, do you have a case that we could look to that would suggest that where this case falls on the spectrum is close enough to being simple, that equitable movements shouldn't apply. If there's no such case, then there's no such case, but if there was one, it would be good to know about it. From the First Circuit, not that I know. From any other circuit? Not that I know. From any other circuits, I'm not, I'm not sure. I haven't, I haven't found, in my research, I haven't, I haven't found a case that is similar to this one, which is a very garden variety type of bankruptcy case, no. I haven't found, I haven't found any case, any case law on that. Isn't there a general policy in bankruptcy cases that you want to reach finality as soon as you can, rather than let it drag on forever? Yes, that's right. But your argument seems to go against that. It's only, it's only one of many factors that has to be taken into consideration. And this court has stated that, this court has stated many times that the fact, the mere, mere delay or mere passage of time is not enough to, is not enough to establish equitable movements. It has also, there has also have to be an effect on the, on the possibility of granting a remedy to the appellant. In this case, it is very, it is very feasible to grant a remedy to USIC. Did you take any actions that you could call, soon after this situation arose, did you ask for a stay? Excuse me, can you repeat the question? Did you ask for a stay? Yes, we asked for a stay, both before, both after the, during the appeal before the panel, and we asked also for a stay before this court. We could not obtain it, however, during the... Did you do that with diligence? Huh? Did you do it with diligence? How soon after you were able to do it, did you do it? Okay, we filed, there was a delay, there was a delay of three months in requesting the stay from the time of the appeal, from the notice of appeal to the bankruptcy appellate panel. There was, there was three months passed before, three months and something passed before we filed a motion for stay. And what's the reason for that? I really don't see any, I can't, I don't know if there's any reason in the record, we probably didn't think it was necessary. Because the case, the case is not, the case was not a, it's quite simple case, it's not, we didn't see any situation that would be, that it was imminent to request a stay. And... Well, the court had approved the plan and had started distribution, why wouldn't that be reason to request a stay? Because we understood, I mean, it was simply that time passed. When we realized that, when Chia, when Hidero requested the entrance of a final decree, then it was, then it was time to file the, to request a stay. But then, when the stay was denied, you didn't appeal the denial. Yes, because the, when we filed, when we, when the bankruptcy court had a hearing, and in that hearing, the, and in that hearing, the case, the bankruptcy court granted remedies that we thought were sufficient to, were sufficient to... To make the stay, to make the case not be moved while we were appealing. However, we did request, we did request a stay from the, from the BAP, and we requested a stay from this court, when the bankruptcy court denied them. So, in that sense, I mean, so we did not appeal, file an appeal from the denial of the stay, we did follow the rule, rule eight, and we renewed our request before the court of appeals and before the BAP, and those were denied. That's time. Well, it's time? Well, thank you. Thank you. I'll address the court in rebuttal. Very good. Closing counsel, Valle. Yes, good morning, or good afternoon, your honors. Luisa Valle on behalf of the debtor, Pedro Lopez Munoz. I would like to address what we understand as the gatekeeping issue before the honorable court, which is jurisdiction and the effect of equitableness in this appeal. In this case, your honor, it is necessary to clarify the facts. First of all, twenty-two months ago, the bankruptcy court entered the order confirming the plan. USIC appealed the order, nevertheless, it requested a stay after the debtor had commenced payments and had requested the entry of final decree because the plan was substantially consummated. It was at that juncture when they sought the stay for the first time. Therefore, the debtor had already transferred property pursuant to the plan. It had sold its residence as it was stated in the plan in order to pay a class of creditors. It had commenced making payments to all other creditors under all other classes under the plan, and it had assumed the operation of its business. So, all of the factors and all of the requirements for substantial consummation had been met. Once that happens, the debtor seeks the entry of final decree. It is at that juncture when USIC requests the stay before the bankruptcy court. The debtor opposes and the bankruptcy court denies the stay pending appeal. What happened at that time? USIC kept the appellate process before the BAP. Nevertheless, it did not seek a stay before the BAP at that time, nor did it seek an expedite consideration of that first appeal. This was a factor that was considered by the BAP when it entered and it ruled on our motion to dismiss. Once final decree is entered by the bankruptcy court, the estate is closed. We file a supplement to our motion to dismiss before the BAP, alerting the BAP that this fact had occurred. USIC opposes our supplement. Nevertheless, the BAP, applying properly the doctrine of equitable mootness, determines that this appeal was moot. After that, USIC files the appeal before this honorable court, seeks a stay before the BAP, which is denied, seeks a stay before this honorable court, which was also denied. Nevertheless, it has let this second appeal run its course without seeking an expedite determination of the same. So, what do we have truly right now? We have a plan that was confirmed 22 months ago. The debtor has been paying promptly to all of its creditors under the plan for the past 22 months. And what was originally $5,000 and $61,000 in disbursements, to date, add up to $1.1 million, including payments to USIC. So, what they understood was a proper and effective remedy that they could achieve was really not what has transpired. The court asked USIC what would happen if they received the remedy that they sought. It is necessary to state that USIC opposed the confirmation of the plan. It was the only creditor that opposed the confirmation. This was a consensual plan where all voting classes accepted the same. So, we have the support of all creditors except for USIC. And what did they request? Their alternative was not dismissal. Their alternative was conversion. So, let's say that this honorable court decides to reverse the opinion and order of the bankruptcy court. What would happen is that the case would be converted to Chapter 7. And what happens then? We go back to square one. We go back to what started seven years ago in 2013 when this case was filed. Chapter 7 trustee would need to be appointed. A 341 meeting would need to be held. Schedules and Statement of Financial Affairs would need to be filed. A trustee would have to employ its professionals, make and perform its duty as a fiduciary under the bankruptcy code, and insure the assets of the estates. And all of this would cause a delay in detriment to all of the other creditors that have supported the plan, the substantially consummated plan, and who have been receiving payments as per the terms of the plan during the past 20 months. So, what we would have, your honor, would be an action that would be in detriment to all others under the speculation that USEC understands that a Chapter 7 would be better than a Chapter 11. Under the scenario you're describing, what would happen to the payments that had already been made? Well, your honor, a Chapter 7 trustee has the alternative under the avoidance powers under the bankruptcy code to undo post-petition transfers made to creditors as well as pre-petition transfers. The theory that USEC has that a credit would be created is really speculative. Why? Because the duty of the trustee is to take all of the assets of the estate, liquidate them, and then pay according to the established payment priorities that is given under the bankruptcy code, which is not necessarily the same priority under the plan in Chapter 11. Why? Let me ask it a different way. If this scenario, which you're describing as kind of the nightmare scenario, if it came to pass and it happened, would it be possible for that scenario to run only going forward so that the prior payments would just stay where they were? Not necessarily, your honor, because there is... No, no. Would it be possible for that to happen? In order for that to be possible, at the time of distribution, there must have been a surplus achieved by the trustee that would be enough to provide for what the debtor, the 1.1 the debtor has already paid, plus an excess after taking into consideration Chapter 7 administrative expenses, Chapter 11 administrative expenses, and then all other payments under the plan. And that is something that, in my humble opinion, is very speculative. Why? Because there may be assets that are contemplated under the plan that in a Chapter 7 scenario would have no equity. There's been no showing by USEC here as to that point that would suggest that it could all just happen on a going forward basis, I take it. That is correct. That is correct, your honor. One last question from me, which is just there's a dispute, it seems like, in the circuits as to whether we're supposed to review this under abusive discretion or de novo. Well, we understand that there is a dispute within the circuits as to how a determination of equitable mootness should be reviewed. We understand that this is a discretionary determination made by the panel. And the court may, on appeal, review it by abusive discretion. Nevertheless, we understand that in this case, even if it were under the lower appellate standard of de novo, the bankruptcy appellate panel's determination should subsist because it considered the equitable factors and the pragmatic factors that are necessary to be considered under the equitable mootness doctrine and what has been established by the case law of this own circuit. If we look at what are the equitable factors, did USEC preserve its appellate rights? It is uncontested that it did not. It belatedly sought a stay and it did not, after it was denied, take the necessary measures in order to avoid the substantial consummation of the plan. And as to what are the pragmatic factors that the court must consider? What is the effect to all other parties or all other creditors that are not before the appellate court? And what Judge Torreya brought, which is a very important factor, is the finality of bankruptcy proceedings, which is one of the cornerstones of a reorganization process under Section 311, which in this case has been fully achieved and which time has proven that the plan was feasible, the debtor has complied, and all creditors, including USEC, have been receiving payment during these 20 months. How did you respond to the appellant's argument that the doctrine of equitable mootness should be reserved for more complicated cases or more egregious delay? Well, I understand that if the appellant does not preserve its appellate rights, as it happened in this case, and it's not three months. What the court needs to see is that 22 months have elapsed since the plan was confirmed. This plan was confirmed in September 2018, and debtors started making payments in November 2018. So this has a high impact because it's not a garden-by-aridity bankruptcy as appellants are here trying to present to the court. This is a case in which the debtor confirmed its plan and has been for the past almost two years making timely payments in full compliance in a plan that was consensual and which all other creditors supported. So, even though this may seem like a simple case compared to maybe the public-serve case, which had to consider many other transactions, the truth is that within the scope of these specific facts, equitable mootness is proper and should be applied and was properly applied and considered by the bankruptcy appellate panel because the effect against third parties that are not before the appellate court is detrimental and will have a significant impact because it's not that tomorrow there's going to be a check ready for them once the case is converted. It's that this case would have to go back to square one. We would go back seven years. This is a bankruptcy that was filed in 2013. So, we would go back to seven years. Schedules need to be filed. A new 341 meeting has to be filed. A trustee has to administer the estate with no guarantee. It's not your responsibility, but I'm trying to figure out what is the advantage to the appellate of undoing everything? What is the advantage of him being able to convert this to a Chapter 7? Well, in our opinion, there is none. And that was proven when the bankruptcy court determined that the debtor complied with the best interest test. The best interest test, what it means is that the case is better served through reorganization than through conversion. Why? Because pursuant to our evidence, conversion will not give any dividend to unsecured creditors like USIC. Nevertheless, under the plan, the debtors have the opportunity to receive payments which they have been receiving. We need to understand, and this honorable court needs to understand one thing, and it is that since the beginning of this case, USIC has been an aggressive and litigious creditor to this debtor. Why? I don't know. But the record of the case shows that since 2013, we have been, even before this honorable court, twice. There was a prior appellate process in which USIC tried to appoint a Chapter 11 trustee, which was denied. The bankruptcy appellate panel denied it, and this honorable court denied it also. Once those efforts were frustrated, then they sought conversion and objected the confirmation. And they were the only creditors that were seeking that remedy. All other creditors sided with the debtor, and they were trying to have this case finalized and have them start receiving payments under their plan. They have fully supported the debtor through a consensual plan. And that is what the record of the case states. These are undisputed facts. Is there any benefit that you can discern from this being decided on the merits, in terms of the finality issue, on the merits of the best interest question, rather than equitable mootness? Or is deciding on equitable mootness give you just as much finality? Well, Your Honor, it is our position, and that is why we filed a motion for reconsideration before this honorable court, that equitable mootness is a matter of jurisdiction. Once the BAP decided that the appeal, in its first instance, was moot, then there is no jurisdiction to go to the underlying opinion of the bankruptcy court. We briefed that, and we mentioned three cases in our motion for reconsideration, which are the case of El Cepatulo, Cascade Roads, and Community Future Trading Company. And in all of those cases, it was determined that once there is an intermediate determination of mootness of an appeal, there is a lack of jurisdiction to go into the underlying order. You, in its opposition, cite several cases that do not have similar facts as what we have here. There were cases in which there was an intermediate ruling. If I could ask you a more practical question, which is, you seem rightly concerned about finality. Yes. And I just was asking, as a practical matter, if we rule on equitable mootness grounds, rather than on the best interest grounds, putting aside whether there is a jurisdictional bar to us doing so, does that give you just as much finality in terms of getting this moving as it would if we decided on the merits of the best interest question? In your favor. It does bring finality. And we understand that in the event that the court would enter into the underlying order, we would also prevail because USEC has not proven that there was an abuse of discretion, which is the standard of review for an order of confirmation of the plan. That's time. Thank you. Thank you, Your Honor. We request permission to be excused. I think it's a rebuttal. Yes, Judge, we're going to hear from the opposing counsel. Yes. Yes. A few points. First of all, still, the data has not shown that it is impossible or it is a nightmare to grant USC government in this case or convert to Title VII in this case. So there are procedural inconveniences, but that has to be weighted against the obligation of courts to exercise their jurisdiction and decide the case on the merits. The panel simply threw away the case without reaching the merits. And that would be understandable in cases such as in Republic Service, which are very complex and it would have been practically impossible to revert all the transactions, everything that was done from the approval of the plan onward. This is not this type of case. What is the benefit you seek? If we rule in your favor, how are you going to be better off? Well, because if we will be benefited because we will be getting more money from the estate. And not only USC, all unsecured creditors will be getting a higher percentage of their claims on their conversion to Chapter VII. That was what our USC expert showed in his report. And so it will be beneficial. Not in turn, maybe it will be a delay in obtaining the money, but they're being delayed in obtaining the money anyway because they're being paid through five years instead of being paid now. So USC will be paid more money and sooner than under this plan. So that's the benefit to USC. And that's the benefit to all the unsecured creditors in this plan. So it will be beneficial to USC. Obviously, if it wasn't beneficial to USC, if it wasn't worth to USC to do this, to do this appeal, we wouldn't be here. And I would like to respond to something that... That's time, Judge. Okay, I'm sorry. I'll submit the case then on the... And thank you for... You may use one minute to make any other point. You have one more minute. Yes, she's... Sister Counsel stated that USC has been, throughout this case, has been very active litigating. The reason why is very obvious. We have a $2.7 million claim. But even that, even taking that USC has been litigious, that's completely irrelevant to the matter of equitable mootness. The amount of time that the case takes in being resolved is of no relevance to the analysis of whether the case should be subject to equitable mootness. And finally, there's one thing. It's about the standard of review. There is a split in case law. I think it was the 6th or the 8th Circuit that decided that the standard is de novo because the appellate court, the appellate panel is in the same position as this court to decide the case. And therefore, the review should be as a matter of law. We understand it should be de novo. But even if it's an abuse of discretion, we understand that the equitable mootness decision should be reversed. Thank you so much. Thank you.